IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:16CR274 |
| Plaintiff, ) | |
| ) | FINDINGS AND |
| v. ) | RECOMMENDATION |
| ) | |
| AARON JENSEN, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the Motion to Suppress Statement (Filing No. 21) filed by defendant Aaron Jensen (Jensen). Jensen, a non-Indian, is charged in the Indictment with the September 1, 2016, assault within the boundaries of the Winnebago Indian Reservation of an Indian female, a person similarly situated to a spouse, after Jensen had been convicted of crimes of domestic abuse in violation of 18 U.S.C. §§117 and 1152. Jensen seeks to suppress any statement or admission Jensen made to law enforcement officers on September 1, 2016.

The court held a hearing on the motion on November 22, 2016. Jensen was present with his counsel, Assistant Federal Public Defender Julie B. Hansen. The United States was represented by Special Assistant U.S. Attorney Erin R. Eldridge. The court heard the testimony of Acting Lieutenant Justin Lee McCauley (Lt. McCauley) of the Winnebago Police Department (WPD) and Special Agent Stephen Friend (Agent Friend) of the Federal Bureau of Investigation (FBI). The court also received in evidence the following exhibits: an FBI Advice of Rights form (Exhibit 1); an audio disk of interview (Exhibit 2); and a transcript of interview (Exhibit 3). A transcript (TR.) of the hearing was prepared and filed on November 29, 2016 (Filing No. 30).

**FINDINGS OF FACT**

On September 1, 2016, in the late morning hours, Lt. McCauley was on duty with the WPD when he received a dispatch report of a white minivan being driven erratically and the occupants engaging in a fight (TR. 4). Lt. McCauley drove to the general area and located the stopped minivan across from a gas station on the Winnebago Reservation (TR.

4). As he arrived, Lt. McCauley observed an open passenger side door with a man hunched over inside the minivan, moving back and forth. (TR. 4). Lt. McCauley saw someone inside, swinging arms, and thrashing about (TR. 4). As Lt. McCauley pulled up and parked his patrol vehicle behind the minivan, a male, later identified as Aaron Jensen, was observed pulling a female, later identified as M.S., by her hair out of the minivan while swinging his fists (TR. 4-5). Lt. McCauley testified there were "fists all over, legs all over" describing the scene (TR. 5). Lt. McCauley "screamed and hollered at the man to let go of her" (TR. 5). Lt. McCauley pointed his Taser at Jensen and ordered Jensen to stop (TR. 5-6). Jensen sat up and appeared shocked to see Lt. McCauley (TR. 6). Jensen's eyes were big and glossy, he was sweating, and he screamed "She's crazy, bro, she's crazy bro, she's trying to kick me" (TR. 6). As Jensen sat up, he let go of M.S. and M.S. rolled backward and did a complete flip over on the ground (TR. 6). As Lt. McCauley got closer to Jensen, he shouted "she's crazy, she's crazy, she's trying to get her brothers to beat me up" (TR. 6). Lt. McCauley ordered Jensen to get on the ground and Jensen complied (TR. 7). Lt. McCauley handcuffed Jensen, sat him up, and walked him back to Lt. McCauley's patrol car (TR. 7). As he was walking Jensen back to the patrol car, Lt. McCauley asked M.S., who was bleeding, if she were okay and she nodded her head as being okay (TR. 7-8).

     Lt. McCauley put Jensen in the patrol car and asked Jensen his name and whether he was Native American (TR. 8). Jensen said "not really" but that he had some Native American relatives (TR. 8). Lt. McCauley asked Jensen if he was enrolled in a federally recognized tribe and Jensen said no (TR. 8). Lt. McCauley radioed dispatch requesting Thurston County officers to assist because he had a non-Native American suspect (TR. 9). Lt. McCauley left Jensen in the back of the patrol unit and went to assist M.S. at the minivan (TR. 9). In the meantime, a patrol car from the Thurston County Sheriff's Office arrived on the scene (TR. 9). Lt. McCauley went back to the minivan to assist M.S. and noticed a small cylindrical glass tube, four to five inches long, commonly used for smoking crack and methamphetamine on the ground near the minivan (TR. 9; 18). Lt. McCauley picked the pipe up and asked M.S. if the pipe was hers (TR. 10). M.S. told Lt. McCauley she does not do drugs and the pipe was Jensen's (TR. 10). M.S. said she only drinks and

that Jensen does drugs but never in front of her (TR. 10).  Lt. McCauley took the pipe back to the patrol car to place in an evidence bag when Jensen, without being questioned, saw the pipe and said the pipe was not his (TR. 10).  When asked if it belonged to M.S., Jensen said he didn't know but it didn't belong to him (TR. 11).

Agent Friend was traveling to Winnebago on unrelated matters and happened upon the road-side scene with the minivan (TR. 33).  He stopped to assist (TR. 33).  Agent Friend directed Lt. McCauley to transport M.S. to the hospital and Jensen to be transported to the WPD so Jensen could be interviewed (TR. 33).  Thurston County officers transported Jensen to the WPD where Jensen was interviewed by Agent Friend about an hour later (TR. 33-34; 39).  Before the interview, Agent Friend was told by Lt. McCauley that Lt. McCauley had driven up on the scene and observed Jensen pulling the victim out of the vehicle by her hair (TR. 38).  Agent Friend remembers being told that a used meth pipe was recovered at the scene but he recalled no other discussion about drugs or alcohol with Lt. McCauley (TR. 38-39).  Before he interviewed Jensen, Agent Friend had Jensen unhandcuffed and moved to an interview room (TR. 39).  Agent Friend recalled that Jensen was agitated and Agent Friend asked if a preliminary breath test was taken (TR. 40; Exhibits 2 and 3).  Agent Friend was informed the level was .06 (TR. 40; Exhibits 2 and 3).  Agent Friend did not smell any alcohol on Jensen (TR. 40).

The interview began at approximately 1:51 p.m. (Ex. 1).  The interview was tape recorded and the recording and a transcript of the recording were reviewed by the court (TR. 34; Exhibits 2 and 3).  At the outset of the interview, Agent Friend advised Jensen of his ***Miranda*** rights which Jensen waived by signing the Advice of Rights form (Exhibits 1-3; TR. 36).  Jensen was clear and calm when he read the consent form prior to the interview (Exhibit 2 and 3).  When asked about the meth pipe found at the scene, Jensen said he didn't know where it came from and he hadn't used meth in years (TR.43; Exhibits 2 and 3). At various times during the interview and in response to questions asked regarding what happened, Jensen stated he did not want to get M.S. in trouble (Exhibits 2 and 3).  During the interview Jensen did not slur his words and his answers were, generally, responsive to the questions (Exhibits 2 and 3).  Listening to the tape recording of the interview and

3

reading the transcript of the interview leads one to conclude Jensen's statement to Agent Friend was voluntary.

## LEGAL ANALYSIS

Jensen asserts he was either intoxicated by alcohol or methamphetamine, or both, at the time he gave statements to Lt. McCauley and Agent Friend. As such, Jensen claims such statements were involuntary and inadmissible.

The touchstone for the admissibility of a defendant's statements is voluntariness. **Brown v. Mississippi**, 297 U.S. 278 (1936). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." **United States v. Perry**, 714 F.3d 570, 574 (8th Cir. 2013) (**quoting United States v. LeBrun**, 363 F.3d 715, 724 (8th Cir. 2004)). "To determine whether a confession is voluntary, we look at 'the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused.'" **United States v. Vega**, 676 F.3d 708, 718 (8th Cir. 2012) (**quoting United States v. Boslau**, 632 F.3d 422, 428 (8th Cir. 2011)). Among the factors the court considers are "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." **United States v. Wallace**, 713 F.3d 422, 426 (8th Cir. 2013) (**quoting Vega**, 676 F.3d at 718).

It is the government's burden to "prove by a preponderance of the evidence that the challenged statements were voluntary." **Boslau**, 632 F.3d at 429 (**quoting LeBrun**, 363 F.3d at 724). In this case, the interview by Agent Friend took place at 1:51 p.m. on the 1st of September after Jensen had been taken into custody. Agent Friend testified Jensen was agitated when the interview started. Given the circumstances which preceded the interview, Jensen's condition of agitation and sweating is understandable. Precautions were taken when a preliminary breath test was taken from Jensen resulting in a reading of .06, a level not prohibitive of driving a motor vehicle. Listening to the recording of the interview does not reflect a subject who was so incapacitated he could not provide a voluntary statement. The government's burden in this matter was met by the evidence

produced at the hearing. While Jensen suggests and implies he was intoxicated or under the influence of methamphetamine to the extent that any statement he gave was involuntary, Jensen presented no evidence other than the testimony of Lt. McCauley and Agent Friend that his statement was involuntary.

It is well settled that a law enforcement official is required to advise an individual of his or her **Miranda** rights before questioning if that individual is in custody. **United States v. Williams**, 760 F.3d 811, 814 (8th Cir. 2014). In this case, Jensen was in custody for **Miranda** purposes from the inception with his encounter with Lt. McCauley at the roadside scene or when questioned by Agent Friend at the jail.

With regard to the statements Jensen made to Lt. McCauley at the roadside scene about the glass pipe found outside of the white minivan, Jensen was not questioned by Lt. McCauley when the glass pipe was brought to the patrol car. Lt. McCauley testified he was putting the pipe in an evidence bag when Jensen, upon seeing the glass pipe, said it did not belong to him. "Interrogation in the **Miranda** context refers to express questioning and to words or conduct that officers should know is reasonably likely to elicit an incriminating response from the suspect." **United States v. Crisolis-Gonzalez**, 742 F.3d 830, 836 (8th Cir. 2014) (internal quotation marks omitted).

> Interrogation occurs when a law enforcement officer engages in either express questioning or its functional equivalent, which includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

**United States v. Hernandez-Mendoza**, 600 F.3d 971, 976-77 (8th Cir. 2010) (**citing Rhode Island v. Innis**, 446 U.S. 291, 301 (1980)); **see also Crisolis-Gonzalez**, 742 F.3d at 836. "[S]tatements made by a custodial suspect in response to interrogation are inadmissible unless the suspect has voluntarily, knowingly, and intelligently waived his right against self incrimination." **United States v. Binion**, 570 F.3d 1034, 1040 (8th Cir. 2009). However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." **Miranda v. Arizona**, 384 U.S. 436, 478 (1966); **see also Crisolis-Gonzalez**, 742 F.3d at 837 ("**Miranda** does not protect an accused from a

spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."). In this case, the glass pipe was not presented to Jensen as a "look what I found" action but the placement in an evidence bag was observed by Jensen. Jensen's statement that the pipe was not his, for whatever evidentiary value it may have, was not the product of a violation of the *Miranda* rule. However, Lt. McCauley's response to Jensen's outburst by questioning Jensen further as to whom the pipe belonged was custodial questioning requiring *Miranda* warnings. Jensen's voluntary responses should not be admissible in the government's case-in-chief.

Jensen was in custody at the time of Agent Friend's interrogation. Jensen was advised of his *Miranda* rights at the start of the interrogation and Jensen waived those rights and agreed to talk with Agent Friend. As set forth above, the court finds Jensen's waiver to have been made voluntarily and his statements to Agent Friend are admissible against Jensen.

**IT IS RECOMMENDED TO JUDGE JOHN M. GERRARD that:**

Jensen's Motion to Suppress Statement (Filing No. 21) be denied.

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 14th day of December, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge